## TICKTIN v. FIDELITY & CASUALTY CO. OF NEW YORK.[1]

### (Circuit Court, W. D. Missouri, W. D. May 20, 1898.)

### No. 2,222.

ACCIDENT INSURANCE—SUICIDE.

Rev. St. Mo. 1889, § 5855, which provides that in suits "upon policies of life insurance," suicide shall be no defense, although the policy may contain stipulation to the contrary, does not apply to accident policies, although Rev. St. Mo. 1889, § 5811, authorizes life insurance companies to engage in the business of accident insurance, declaring, however, that "such accident insurance shall be made a separate department of the business of a life insurance company undertaking it."

This was an action by Liebbe Ticktin against the Fidelity & Casualty Company of New York on an accident insurance policy. Defendant demurred to the petition.

I. Ringolsky, for plaintiff.

Warner, Dean, Gibson & McLeod, for defendant.

PHILIPS, District Judge. The defendant, the Fidelity & Casualty Company of New York, is what is known as an "accident insurance company," engaged in the business of insuring persons against injuries resulting from accident. The petition avers that the accident to the plaintiff resulted in death from suicide while insane, by taking oil of mustard. By the fourth clause of the policy it is expressly stipulated that "in case of injuries, fatal or otherwise, intentionally inflicted upon himself by the insured, or inflicted upon himself or received by him while insane, the measure of this company's liability shall be a sum equal to the premium paid, the same being agreed upon as in full liquidation of all claims under this policy." As the petition does not count upon a claim for recovery only of the premium paid, but for the full amount of the policy as in case of death by accident, the demurrer raises the question that, by the express provision of the policy, the liability sued for has not arisen. To obviate this objection, the plaintiff invokes the provision of section 5855, Rev. St. Mo. 1889, which is as follows:

"Sec. 5855. In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, it shall be no defense that the insured committed suicide unless it shall be shown to the satisfaction of the court or jury trying the cause that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

The question of controlling importance to be decided is: Does this statute apply to an accident policy? The time at my command will not permit more than to briefly state the conclusions I have reached on this question. By the express terms of said section it is limited to "policies of insurance on life." Clearly, therefore, there is no escape from the proposition that, unless an accident policy can be held to be a policy of insurance on life, this statute affords no shelter to the defendant. It being a statute in contravention of the common-law

___
[1] Motion for rehearing pending.

rule, affirmative legislation changing the rule at common law is indispensable. From the very inception of any legislation in this state respecting the subject of policies on life insurance, such policies have been distinctively recognized as sui generis. Provisions peculiarly and exclusively applicable thereto have, in lines broad and distinctive, run through the different statutes. When accident insurance policies were provided for in acts of the legislature, provisions and requirements peculiar to them were as distinctively present and observed. This was confessedly so until the statute of 1889, when life insurance companies were for the first time authorized to engage in the business of issuing accident policies. Section 5811, Rev. St. Mo. 1889, amending section 5938, Rev. St. Mo. 1879. Prior to this amendment, no lawyer ever contended that these two business associations were not erected as separate departments, as distinct as any other two business concerns erected under the statutes of the state providing for the creation of business corporations. And, as up to the enactment of the last-named statute, no life insurance company created under the laws of the state of Missouri, or doing business therein, was permitted to enter into the business of issuing accident insurance policies in the state, when the legislature declared that, in suits upon policies of insurance for life, it should be no defense that the insured had died by suicide, the rule "Expressio unius est exclusio alterius," precluded carrying this special enactment over to any other claim of insurance than that of insurance on life proper. Reduced to its last analysis, therefore, the advocates for the application of the provision of section 5855 to an accident policy must base their contention upon the naked proposition that as, in 1889, the legislature authorized life insurance companies organized under the laws of the state to engage also in the business of issuing policies of accident insurance ex vi termini, it rendered the provision of section 5855 applicable to accident policies. This enabling act of 1889 in no wise altered or affected the other provisions of the antecedent statute in pari materia, for conducting the business operations of, and imposing separate obligations and conferring distinct privileges upon, two distinct branches of the insurance business. The act of 1889, after authorizing associations organized "for the purpose of making assurance upon the lives of individuals" to issue policies providing for "an indemnity against death, and for weekly or other periodic indemnity for disability occasioned by accident to the person of the insured," expressly declared that "such accident insurance shall be made a separate department of the business of a life insurance company undertaking it." To no extent did it obliterate the lines of distinction between the two classes of business. And as throughout the antecedent statutes providing for and regulating the operation and fixing the duties and obligations of the two branches of insurance companies the provision of section 5855 was restricted to life insurance companies, and the same provision in the same language was carried forward to and incorporated in the statute of 1889, denying the defense of suicide in "suits upon policies of insurance for life," by the well-known rule for the construction of statutes, the provision must receive the same application and be subjected to the same limitation given to it in the older statutes, un-

less the legislature, by express provision or unavoidable implication, gave to it a broader application, so as to embrace accident policies. I am unable to find anything in the antecedent or subsequent provisions of the statute of 1889 which can justify the court in holding that the provision which had for a number of years expressly and exclusively applied to policies of insurance on life, carried forward into the later statute under the same terms of limitation, can be applied to policies of insurance against accidents declared by the statute to be a separate department. If it had been the purpose or thought of the legislature to wipe out all distinction in the provision of section 5855 in its application to the two distinct classes of policies, it would have said so. But the legislature has gone no further than to say that a company engaged in the business of issuing policies of insurance on life may also engage in the business of issuing insurance policies against accidents as a separate department. Throughout the statute, separate, distinct provisions, regulations, and obligations are made and imposed upon the companies transacting such dual business, as much so as if existing and operating under separate franchises. It does therefore seem to me that to apply to this case the defense provided for in said section 5855 would justly expose the court to the criticism of judicial legislation.

The defense of death resulting from an act of suicide being good at common law (Bigelow v. Insurance Co., 93 U. S. 284; Salentine v. Insurance Co., 24 Fed. 159; Billings v. Insurance Co. [Vt.] 24 Atl. 656; Scarth v. Society [Iowa] 39 N. W. 658), and this rule not having been changed by statute, the demurrer to the petition on this ground is well taken. It is therefore unnecessary to consider the other question raised by the demurrer.