## RILEY *v.* HARTFORD LIFE & ANNUITY INS. CO.[1]

### (*Circuit Court, E. D. Missouri.* October 14, 1885.)

**LIFE INSURANCE—SUICIDE—"FELONIOUS OR OTHERWISE."**

Where a life insurance policy provides that it shall be void in case the assured die by "self-destruction, felonious or otherwise," the proviso includes all cases of voluntary self-destruction, sane or insane.

At Law.

Suit upon certificates of membership issued by defendant, insuring the life of George M. Riley. The answer states, among other things, that the "certificates sued on herein were issued by the defendant and accepted by George M. Riley upon the following express condition and agreement made between the said assured and the defendant and constituting part of said certificates, to-wit: That if said member should die by ' self-destruction, felonious or otherwise,' then, and in such cases, the said certificates should be null and void and have no effect, and no person should be entitled to damages or the recovery of any money paid thereon;" and that the assured "came to his death from self-destruction, in this: that the said assured died from the immediate effect of a pistol fired by his own hands, such shot having been so fired by the assured with the intention of taking his own life." Replication that the assured committed suicide while insane.

A jury having been sworn to try the issues in said cause, plaintiff first offered in evidence the petition of the plaintiff for divorce, which was filed January 19, 1884.

Mr. Krum, counsel for the defendant, objected on the ground that there is no denial in the replication that the shot was fired by the deceased with the intention on his part of taking his own life. "In other words," said he, "there is nothing in this replication to place this case upon the theory of an accidental destruction of his life by his own act. The plaintiff concedes that the death of her husband, the assured, was caused by the act of the assured himself. It was conceded that the death did not result by reason of any accident to which the assured was exposed. He took his life himself. He fired the shot intentionally, according to the averment of the answer, and with the intention of taking his own life. That fact is not denied, and I submit, in the light of all the authorities upon this question, the defendant is entitled to a verdict upon the pleadings, and that it is not competent to go into any inquiry at all as to the condition of the mind of the assured at the time when he committed the act of which this defendant complains."

TREAT, J., (*orally.*) Ordinarily, of course, felony implies an intent. That is involved in all this class of inquiries; but your proposition is

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

broader—"feloniously or otherwise." Whether that is broad enough to exclude all these considerations, I will not pass upon to-night.

The court thereupon adjourned until October 15, 1885.

---

On October 15, 1885, the court met pursuant to adjournment, and the following opinion was delivered:

*George M. Stewart,* for plaintiff.

*Chester H. Krum,* for defendant.

TREAT, J., (*orally.*) After we adjourned last evening I took time to examine the proposition raised by the counsel for the defendant in this cause. The proposition in its more convenient form could have been presented by a demurrer to the replication, and thereby have saved time and unnecessary delay.

*Mr. Krum.* My excuse for not doing so, your honor will remember, was because I have been so hurried with other matters in this court that I did not have time to present the question in the form of a demurrer.

*The Court.* The proposition now comes up after the jury is impaneled on the presentation of the first item of testimony offered in this case. Whether that should be admitted or rejected depends on the determination of the court with respect to the true construction of the policy submitted. I have examined these cases to which counsel have referred. They are not new to me, because the original *Terry Case (Insurance Co.* v. *Terry,* 15 Wall. 580) went from this circuit court, and the *Case of Bigelow,* decided in the United States supreme court, 93 U. S. 284, remains unchanged, and the *Case of Broughton,* 109 U. S. 121, S. C. 3 Sup. Ct. Rep. 99, and the *Case of Lathrop* in 111 U. S. 612, S. C. 4 Sup. Ct. Rep. 533, do not vary the rule; for the policies in both those cases were like the original *Terry Case.* But where parties insert in the contract "that if the death is caused by the assured, sane or insane," then there can be no recovery; if he committed the fatal act otherwise than accidentally. Of course, if it is accidental, it was not his act. The next question presented here is whether the use of the terms "feloniously or otherwise" are equivalent to the terms "sane or insane." As suggested last night, the word "feloniously" ordinarily implies an intent, which might lead the court to inquire whether the party was capable of having an intent within the meaning of the law, which would leave this case as in the *Terry* and other like cases. The supreme court in the *Case of Bigelow* decided that the use of this phrase "feloniously or otherwise" was equivalent to the words "sane or insane," so that if the assured caused his own death that was the end of the right of recovery; consequently this court has to rule out all testimony looking to the condition of the mind of the

assured when he committed the fatal act. All testimony relating to that will have to be ruled out, though there is an immaterial issue on that point.

The court regrets that all these matters were not disposed of by a demurrer to the petition, but for reasons of his own the counsel prefers this mode, which is a lawful mode. The result of it is, under the pleadings as they stand before the court, the assured, George M. Riley shot himself, and death followed. That ends the case. If he did so, no beneficiary under the policy can recover. This policy is different from a great many others where other questions are open. He chose to take out a policy in a mutual society whereby, if he killed himself, "sane or insane," no matter under what circumstances, and he chose to kill himself, no recovery could be had under the policy.