## PEARL JACKSON *v.* LOYAL ADDITIONAL BEN. ASS'N.

### (*Nashville.* December Term, 1917.)

1. **INSURANCE.** Fraternal benefit insurance. Suicide.

A nominated beneficiary of a life insurance policy or a benefit certificate containing no provision as to effect of suicide may recover where assured, being of sound mind, takes his own life, the insurance not being procured with intention of committing suicide, especially in view of Acts 1907, chapters 441, 457, and Acts 1913, chapter 44, section 8. (*Post, pp.* 497-503.)

Acts cited and construed: Acts 1907, chs. 441, 457; Acts 1913, ch. 44, sec. 8.

Cases cited and approved: Grand Legion v. Beatty, 224 Ill., 346; Campbell v. Supreme Conclave, 66 N. J. Law, 274; Patterson v. Natural Premium Mut. L. Ins. Co., 100 Wis., 118; Seiler v. Economic L. Ass'n, 105 Iowa, 87; Parker v. Des Moines Life Ass'n, 108 Iowa, 117; Mills v. Rebstock, 29 Minn., 380; Kerr v. Minn. Mutual Ben. Ass'n, 39 Minn., 174; Robson v. United Order of Foresters, 93 Minn., 24; Lange v. Royal Highlanders. 75 Neb , 188; Supreme Conclave v. Miles, 92 Md., 613; Arnold v. Insurance Co., 131 Tenn., 720; Knights of Pythias v. La Malta, 95 Tenn., 157; Silliman v. Insurance Co., 131 Tenn., 314; Simms v. Randall, 117 Tenn., 543.

Cases cited and disapproved: Ritter v. Mutual L. Ins. Co., 169 U. S , 139; Davis v. Supreme Council Royal Arcanum, 195 Mass., 402; Shipman v. Protected Home Circle, 174 N. Y., 398; Security Life Ins. Co. v. Dillard, 117 Va., 401.

2. **INSURANCE.** Fraternal benefit insurance. By-Laws.

By-law of a fraternal benefit society avoiding liability upon certificates on lives of members committing suicide. but not retrospective in its terms, does not apply to a certificate previously issued. (*Post, pp.* 503, 504.)

Cases cited and approved: Heiskell v. Lowe, 126 Tenn., 475;
Dugger v. Insurance Co., 95 Tenn., 245; Hardley v. Queen City
Camp, etc., 1 Tenn. Ch. App., 413.

### FROM DAVIDSON.

Appeal from the Chancery Court of Davidson
County.—HON. JAMES B. NEWMAN, Chancellor.

STOKES & STOKES, for appellant.

AUST & McGUGIN, for appellee.

MR. JUSTICE GREEN delivered the opinion of the
Court.

This is a suit upon a benefit certificate, issued by
the defendant association. From a decree in favor of
the defendant, the complainant has appealed.

MacDonald Jackson, the husband of the complain-
ant, joined the association and took out a benefit
certificate for $2,000, payable to his wife, dated Aug-
ust 29, 1896. He paid his dues until his death, April
9, 1916, and was a member in good standing at that
time. He died by his own hand, and the association
resists payment of the certificate by reason of Jack-
son's suicide.

At the time the certificate was issued, there was
no provision in the by-laws or constitution of the
association with reference to suicide, nor did the
certificate, or any other part of the contract, contain
any such provision.

The main question submitted is whether a nominated beneficiary of a life insurance policy or certificate in a benefit society, containing no provision as to the effect of suicide, may recover when the assured, being of sound mind, takes his own life.

Several courts of the highest repute have held that there can be no recovery under such circumstances. *Ritter* v. *Mutual L. Ins. Co.*, 169 U. S., 139, 18 Sup. Ct., 300, 42 L. Ed., 693; *Davis* v. *Supreme Council Royal Arcanum*, 195 Mass., 402, 81 N. E., 294, 10 L. R. A. (N. S.), 722, 11 Ann. Cas., 777; *Shipman* v. *Protected Home Circle*, 174 N. Y., 398, 67 N. E., 83, 63 L. R. A., 347; *Security Life Ins. Co.* v. *Dillard*, 117 Va., 401, 84 S. E., 656, Ann. Cas., 1917D, 1187.

In our opinion, however, the weight of the authority is to the contrary. *Grand Legion* v. *Beatty*, 224 Ill., 346, 79 N. E., 565, 8 L. R. A. (N. S.), 1124, 8 Ann. Cas., 160; *Campbell* v. *Supreme Conclave*, 66 N. J. Law, 274, 49 Atl., 550, 54 L. R. A., 576; *Patterson* v. *Natural Premium Mut. L. Ins. Co.*, 100 Wis., 118, 75 N. W., 980, 42 L. R. A., 253, 69 Am. St. Rep., 899; *Seiler* v. *Economic L. Ass'n*, 105 Iowa, 87, 74 N. W., 941, 43 L. R. A., 537; *Parker* v. *Des Moines Life Ass'n*, 108 Iowa, 117, 78 N. W., 826; *Mills* v. *Rebstock*, 29 Minn., 380, 13 N. W., 162; *Kerr* v. *Minn. Mutual Ben. Ass'n*, 39 Minn., 174, 39 N. W., 312, 12 Am. St. Rep., 631; *Robson* v. *United Order of Foresters*, 93 Minn., 24, 100 N. W., 381; *Lange* v. *Royal Highlanders*, 75 Neb., 188, 106 N. W., 224, 110 N. W., 1110, 10 L. R. A. (N. S.), 666, 121

Am. St. Rep., 786; *Supreme Conclave* v. *Miles,* 92
Md., 613, 48 Atl., 845, 84 Am. St. Rep., 528.

Other cases are contained in notes 84 Am. St.
Rep., 541, 8 Ann. Cas., 162, 8 L. R. A. (N. S.), 1125.
All the annotators agree that the weight of authority
is as above stated.

The cases affirming liability do not cover instances
where the insurance was procured with the intent
of committing suicide. It is recognized that such
conduct would be a fraud on the insurer, and de-
feat the policy. We have no such case before us.
This certificate was carried twenty years.

The reasons given by the courts denying recovery
under such circumstances here presented are that
there is an implied agreement against self-destruction
by the insured in every insurance contract, and that
a recovery under such circumstances would be a fraud
on the insurer; that public policy forbids the en-
forcement of a contract matured by suicide; and,
further, that neither the insured nor his estate, nor
beneficiary, should profit by his wrong. See note 8
L. R. A. (N. S.), 1125.

The idea that suicide is excluded from a contract
of insurance by implication rests on the supposition
that the rates of insurance are based on the theory
that the insured will not take his own life. This is
assumed in *Ritter* v. *Mutual Life Ins. Co.,* supra,
and other cases following that authority.

This assumption, however, is erroneous, as is noted
by the supreme court of New Jersey, in *Campbell*

v. *Supreme Conclave,* supra, and by the supreme court of Nebraska in *Lange* v. *Royal Highlanders,* supra.

As a matter of fact, the mortality tables, upon which all insurance rates are computed, take into account deaths from every cause; deaths by suicide included. It therefore cannot be said that such a death is impliedly excluded from these contracts, when the consideration thereof rests on such a basis.

It follows, then, if the contract includes death by suicide, and premiums are calculated upon such a contingency, the insured perpetrates no fraud upon the insurer by taking his own life, unless indeed the contract was entered into with that intention.

Moreover, it is against the policy of this State to permit implications in insurance contracts. So far as life insurance proper is concerned, it is expressly provided by chapter 441 of the Acts of 1907, that the entire contract of insurance shall be contained in the policy. Not even written documents, such as applications, or medical examinations, can be looked to and taken as part of the contract, although referred to in the policy, unless physically embraced therein. *Arnold* v. *Insurance Co.,* 131 Tenn., 720, 177 S. W., 78, L. R. A., 1915E, 363.

As to fraternal benefit insurance, chapter 44 of the Acts of 1913 regulates that subject in great detail, and in section 8 of said act it is provided that the certificate issued by such societies, together with the articles of association or incorporation, the constitution, laws,

applications, and medical examination "shall constitute the agreement between the society and the member."

So our statutes at present leave no room for any implied obligations or exceptions in insurance policies or benefit certificates.

It has not been considered against public policy in Tennessee to permit a recovery on a contract of insurance where the insured came to his death by his own hand.

In *Supreme Lodge, Knights of Pythias,* v. *La Malta,* 95 Tenn., 157, 31 S. W., 493, 30 L. R. A., 838, the member suicided. Recovery on the certificate was sought to be defeated by an anti-suicide by-law interposed as a defense. This court found that the by-law was illegally passed, and void, and decreed a recovery.

In *Silliman* v. *Insurance Co.,* 131 Tenn., 314, 174 S. W., 1131, L. R. A., 1915F, 707, recovery was likewise decreed on a policy in a case where the insured committed suicide.

As a further indication of the public policy of this State on the subject, chapter 457 of the Acts of 1907 undertakes to regulate the provisions of insurance policies, and it is enacted that every policy shall contain the following:

"A provision that the policy shall constitute the entire contract between the parties, and shall be incontestible after two years from its date, except for nonpayment of premiums, and except for viola-

tions of the conditions of the policy relating to naval and military services in time of war.''

The exception of nonpayment of premiums and military service, contained in the quotation above, strengthens the general provision that the policy shall be incontestible after two years on any other ground; and, by reason of this particular section of the act set out, this court, in *Silliman* v. *Insurance Co.,* supra, held that suicide could not be relied on as a defense, notwithstanding the terms of the policy, where it was committed more than two years after the date of the contract.

Furthermore, as aptly remarked by the supreme court of Nebraska:

''Suicide as a cause of death bears so small a percentage to the other causes of mortality, and is so infrequently committed, that insurance campanies and mutual benefit associations should be permitted at their option to provide in their policies and benefit certificates that voluntary suicide will avoid the contract, or leave them silent on that subject.'' *Lange* v. *Royal Highlanders,* supra.

In addition to this, it must be remembered that life insurance is of a peculiar nature. It is not, in Tennessee, an asset of the insured's estate, subject to his debts, but it is secured by statute to the care and support of his dependents. It is the policy of our courts and our legislature to protect insurance, and see to its application to the purposes indicated. It has frequently been said that the

beneficiaries of a policy are as much in need of its proceeds when the insured comes to his death by suicide as by any other means. So, remembering the real purpose for which life insurance is taken out, and for the other reasons stated, we are not inclined to hold that the complainant herein should be denied relief on grounds of public policy.

In reply to the objection that neither the insured nor those claiming under him should benefit by his wrong in taking his own life, it seems a sufficient answer to say that the insured derives no benefit whatever from such an act, as a matter of course, and, where the policy is payable to a named beneficiary, the distributees of the insured derive no benefit. The principle relied on therefore, can have no application.

In life insurance policies taken directly to a beneficiary, with no reserved power to direct a different disposition of the proceeds, the rights of the beneficiary are vested upon the issuance of the policy; and thereafter the insured could not by suicide, or any other act, affect the beneficiary's interest. Authorities, supra.

It is true that the payee of a certificate, like the one in suit, where the member may change the beneficiary at any time, does not have such a vested right. *Simms* v. *Randall,* 117 Tenn., 543, 96 S. W., 971, and cases cited.

Still, the beneficiary last named does not derive his rights from the estate of the insured. The pro-

ceeds of the policy go to such beneficiary, by reason of the contract of insurance, not by reason of the statutes of descent and distribution.

In so far as the beneficiary is concerned, the suicide of the insured is simply an irrelevant fact, for which the beneficiary is not responsible. As we have seen, the contract does not exclude such a contingency, nor is the enforcement of the contract against our public policy, nor in fraud of the rights of the insurer.

It appears that defendant association did pass a by-law some years after the issuance of this certificate by which it undertook to avoid liability upon certificates on the lives of members committing suicide.

While it is possibly true that a by-law might have been passed which would have related to this particular certificate, the by-law relied on is not retrospective in its terms, and therefore does not include the contract here sued on, under repeated decisions of this court.

An act of the legislature is construed so as to give it prospective and not retroactive force, unless the latter purpose is plainly expressed or necessarily implied. *Heiskell* v. *Lowe,* 126 Tenn., 475, 153 S. W., 284; *Dugger* v. *Insurance Co.,* 95 Tenn., 245, 32 S. W., 5, 28 L. R. A., 796.

This rule of construction has been properly applied to the by-laws of benefit societies in this juris-

diction.    *Hadley* v. *Queen City Camp, etc.*, 1 Tenn.
Ch. App., 413, affirmed by this court.

It results that the decree below is reversed, and
a decree will be entered here in favor of the com-
plainant for the amount of the certificate and in-
terest.